UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
                                      :
LIBERTY INSURANCE CORPORATION,        :
                                      :      22cv1081 (DLC)
                      Plaintiff,      :
                                      :      OPINION AND
            -v-                       :         ORDER
                                      :
NEW YORK MARINE AND GENERAL INSURANCE :
CO., AMERICAN EMPIRE SURPLUS LINES    :
INSURANCE CO., and HUDSON EXCESS      :
INSURANCE CO.,                        :
                                      :
                      Defendants.     :
                                      :
--------------------------------------X


APPEARANCES:

For the plaintiff:
Jaffe & Asher, LLP
Marshall Todd Potashner
Florence Harriet Langer
445 Hamilton Avenue, Suite 405
White Plains, NY 10601

For defendant New York Marine and General Insurance Co.:
Stewart Smith
William F. Stewart
Nancy Zangrilli
300 Four Falls, Suite 670
300 Conshohocken State Rd.
West Conshohocken, PA 19428

For defendant Hudson Excess Insurance Co.:
Melito & Adolfsen, P.C.
Michael Frank Panayotou
233 Broadway Suite 1010
New York, NY 10279

DENISE COTE, District Judge:

     In 2017, a construction worker was injured when he fell

from scaffolding.  The parties in this insurance coverage dispute -- three insurers for the subcontractor who employed the injured worker, the general contractor for the project, and the building owner -- have by stipulation submitted the evidence in this bench trial.  The parties dispute in the underlying state court action whether the injured man's work arose from the contract between the subcontractor and the general contractor.

Their principal dispute in this federal action is over the duty to indemnify.  The plaintiff also requests that one of the defendants, an insurer that is unauthorized to do business in New York State, reimburse it for its attorneys' fees in this federal declaratory judgment action pursuant to N.Y. Insurance Law § 1213(d).  Having reviewed the evidence and heard the parties, the following constitutes the Court's findings of fact and conclusions of law.

## Findings of Fact

I.   The Accident

This dispute emerges from a construction accident in which an employee of Skittles Services Corp. ("Skittles") named Jose Manuel Juarez was injured on November 22, 2017, when he fell from a scaffold erected by and belonging to Skittles.  Skittles was working on a project at 45 John Street in Manhattan, a premises owned by 45 John NY LLC ("45 John" and the "Project").

2

The general contractor for the Project was Avacon Management LLC ("Avacon").

The accident occurred while Juarez was performing demolition work on the first floor of 45 John.  Juarez was standing on a scaffold to remove bricks from a wall and expose beams.  He had not been provided with any protective gear, specifically neither a harness nor a hardhat.  The scaffold, which was 12 to 14 feet high, collapsed, and the fall severely injured Juarez.

Juarez has testified that on the day of the accident, he received all of his instructions from Skittles' employees and that Skittles supplied and its employees erected the scaffold which collapsed and from which Juarez fell.  According to Juarez, Avacon's project manager, Akiva Grinberg, instructed Skittles to perform the demolition work on the first floor where the accident occurred.  The Skittles employee who was Juarez's immediate supervisor, Jose Cardozo, instructed Juarez to use the scaffold on the day of the accident.  Juarez has testified that Skittles' supervisor Isaias Barrera had shown him, while they were working on the Project, how to demolish a wall using a scaffold.

II.  The Underlying Action

Pursuant to New York's Workers' Compensation Law, Juarez cannot sue his employer in connection with this accident.  See

3

N.Y. Workers' Comp. Law § 11.  On December 4, 2017, Juarez sued the general contractor Avacon and the owner of the premises, 45 John, in New York state court (the "Underlying Action"), asserting claims in negligence, under N.Y. Labor Law §§ 200, 240, and 241(6), and under Section 23-5.5 of the Industrial Code of the State of New York.  Juarez identifies "[t]he defective and dangerous condition" as "the defendants' failure to provide the necessary and required safety devices, which caused plaintiff to fall off the scaffold" and that fall being "from a significant elevation to the ground below."

Avacon impleaded Juarez's employer, Skittles (the "Third-Party Action").[1]  In the Third-Party Action, Avacon alleges that a Subcontract Agreement Rider ("Rider") was in full force and effect at all relevant times and applies to the work that Juarez was performing when the accident occurred, and that Skittles controlled the work in which Juarez was engaged.  Avacon alleges causes of action against Skittles for common law indemnification and contribution, contractual indemnification and contribution, and breach of contract for failure to obtain insurance coverage. Avacon alleges that any negligence was due to the "acts and/or omissions of SKITTLES."

---

[1] On or about December 6, 2017, Juarez filed an Amended Verified Complaint in the Underlying Action which changed Avacon's name from Avacon Management LLC to Avacon Management LLC d/b/a Avacon Builders Developers.

During discovery in the Underlying Action, Juarez testified that he advised Skittles' supervisor Barrera that he was experienced in sheetrocking, taping, compounding, plastering, and painting, which is work that Skittles was performing. Juarez testified that on the date of the accident, he left his bag on the second floor when he arrived at the jobsite, which was part of the area where Skittles was working.  John Andicoecheea of Avacon testified in the Underlying Action that Skittles' work at the Premises included interior demolition work although there was nothing "in writing" that would indicate the types of work Skittles was hired to do.  Andicoecheea testified that prior to hiring Skittles for the Project, he spoke with Barrera about the scope of work to be done, which included demolition.  Andicoecheea testified that the Rider was provided to Avacon by its insurance broker and Avacon used the Rider with its subcontractors.

Skittles' supervisor for the Project, Barrera, testified that Skittles did not do any demolition or scaffold work at the Premises or any work at all on the first floor, where the accident occurred.  He testified that at the beginning of the Project he instructed Skittles' employees that "we cannot use scaffolding inside or outside of the building because we don't have any sort of authorization to do that."  Barrera testified that Skittles' work took place on floors two and above.  Barrera

testified that he was the only supervisor of Skittles at the Project and that he had instructed Juarez to do painting and related work on the fourth floor and above on the date of the accident and Juarez was performing this work that day when Barrera left the job site.

III.  The Contracts

    A.   The Avacon Contract

    45 John, as "Owner", and Avacon, as "Contractor", entered into a standard form written contract entitled "AIA Document A 103-2007 Standard Form of Agreement Between Owner and Contractor" (the "Avacon Contract") for the Project on January 12, 2016.  In the Avacon Contract, Avacon agreed to perform work in connection with the "[c]onversion of commercial building to residential with ground floor retail."  The Avacon Contract required Avacon to purchase insurance to protect Avacon from claims like those at issue here, that is, claims "for which the Contractor may be legally liable, whether such operations be by the Contractor or by a Subcontractor or by anyone directly or indirectly employed by any of them."  The Avacon Contract also required Avacon to add 45 John as an additional insured to its policy.

    B.   The Skittles Rider

    Avacon, as Contractor, and Skittles, as Subcontractor, entered into the Rider, which was entitled "Subcontract

Agreement Rider (Contractor/Subcontractor)" and signed by Avacon
on January 29, and by Skittles on February 17, 2016.  The
insurers for 45 John and Skittles stipulated in this federal
action on September 28, 2022 that the Rider applies to the
Project that is the subject of the Underlying Action.[2]

The Rider lists 45 John and Avacon as additional insureds
and indemnified parties.  The Rider does not define the "Work"
that Skittles was to do for the Project.  Andicoecheea testified
that there was no writing that defined the scope of Skittles'
work for the Project.

As noted above, Juarez was engaged in demolition work on
the first floor when he fell from the scaffold.  Skittles has
asserted that when injured, Juarez was working as a borrowed
employee for Avacon on tasks outside the scope of work for which
Avacon had hired Skittles and that the Rider did not, as a
result, require it either to defend or indemnify Avacon or 45
John for Juarez's injuries.[3]

The Rider has a section addressed to Indemnity, which
provides, in part:

> Indemnity.  In consideration of the Contract
> Agreement, and to the fullest extent permitted by law,

---

[2] Having obtained the stipulation, 45 John's insurer withdrew a
deposition subpoena for Skittles.

[3] On the eve of this bench trial, Skittles' insurer agreed to
defend 45 John in the Underlying Action.  It continues, however,
to dispute that it has a duty to defend Avacon.

the <u>Subcontractor shall defend and shall indemnify</u>, and hold harmless, at Subcontractor's sole expense, the Contractor, all entities the Contractor is required indemnify and hold harmless, the Owner of the property, . . . from and against all liability or claimed liability <u>for bodily injury</u> or death to any person(s),. . ., including all attorney fees, disbursements and related costs, <u>arising out of or resulting from the Work covered by this Contract Agreement</u> to the extent such Work was performed by or contracted through the Subcontractor by anyone for whose acts the Subcontractor may be held liable, excluding only liability created by the sole and exclusive negligence of the Indemnified Parties. This indemnity agreement shall survive the completion of the Work specified in the Contract Agreement.

(Emphasis supplied.)

The Rider also required Skittles to obtain insurance to protect Avacon and 45 John

<u>for claims arising out of or resulting from Subcontractor's Work under this Contract Agreement</u>, whether performed by the Subcontractor, or by anyone directly or indirectly employed by Subcontractor, or by anyone for whose acts Subcontractor may be liable. Such insurance shall be provided by an insurance carrier rated "A-" or better by A.M. Best and lawfully authorized to do business in the jurisdiction where the Work is being performed.

(Emphasis supplied.)

The Rider required as well that the Subcontractor's insurance "shall be PRIMARY AND NON-CONTRIBUTORY. With respect to each type of insurance specified hereunder, the Contractor's and Owner's insurances shall be excess to Subcontractor's insurance." The Rider also required the policy to have "contractual liability with minimum limits of $1,000,000 each

8

occurrence, $2,000,000 aggregate and $2,000,000 Products completed operations aggregate with either per project or per location endorsement for property damage and bodily injury."

IV.   State Court Decision

On September 16, 2022, the state court in the Underlying Action granted Juarez's motion for summary judgment under N.Y. Labor Law § 240(1) ("§ 240(1)"), a scaffolding law, against Avacon and 45 John.[4]   The court held the Juarez was entitled to a judgment as a matter of law because he had shown that "he was not provided an adequate safety device" in connection with the work on the scaffolding.   On the other hand, the court granted 45 John's motion for summary judgment and dismissed Juarez's claims brought against 45 John under N.Y. Labor Law § 200 ("§ 200") and for negligence.[5]   The court held that 45 John could not

---

[4] N.Y. Labor Law § 240(1) provides:

> All contractors and owners and their agents, . . . in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.

N.Y. Labor Law § 240(1) (emphasis supplied).

[5] N.Y. Labor Law § 200 provides, in relevant part:

> All places to which this chapter applies shall be so constructed, equipped, arranged, operated and

be held liable under § 200 or for common law negligence because
it did not have notice of any defective condition and did not
supervise Juarez's work.

The court conditionally granted summary judgment to 45
John, without opposition from Avacon, on its claim against
Avacon for contractual indemnification since the parties had
agreed in their contract that if Avacon or its subcontractors
are found negligent, Avacon would indemnify 45 John.  Lastly,
the court denied 45 John's motion for summary judgment for
contractual indemnification against Skittles, finding "that
there is a question of fact as to whether plaintiff was injured,
not in the scope of his employment with Skittles, but within the
scope of the work in the contract between Avacon and Skittles."
Juarez's claim under N.Y. Labor Law § 241(6)[6] remains pending
against 45 John and his claim in negligence remains pending

---

      conducted as <u>to provide reasonable and adequate
      protection</u> to the lives, health and safety of all
      persons employed therein or lawfully frequenting such
      places.

N.Y. Labor Law § 200(1) (emphasis supplied).

[6] N.Y. Labor Law § 241(6) provides:

      All areas in which construction, excavation or
      demolition work is being performed shall be so . . .
      operated and conducted as to <u>provide reasonable and
      adequate protection and safety</u> to the persons employed
      therein . . . .

N.Y. Labor Law § 241(6) (emphasis supplied).

against Avacon.  Avacon's claims for indemnification and contribution brought against Skittles also remain pending.

V.   Workers' Compensation Claim

Juarez filed a workers compensation claim against Skittles for his injuries.  Over Skittles' objection, that claim resulted in a ruling that Juarez was acting in the employ of Skittles at the time of his injury.  Skittles appealed, and the ruling was upheld on July 3, 2018.  See Employer: Skittles Servs. Corp., No. G206-6545, 2018 WL 3322603 (N.Y. Work. Comp. Bd. July 3, 2018).

VI.  The Insurance Policies

Liberty Insurance Corporation ("Liberty"), the plaintiff in this federal action, is providing a defense to 45 John in the Underlying Action.  New York Marine and General Insurance Company ("NY Marine") is providing a defense to Avacon.  Hudson Excess Insurance Company ("Hudson") is providing a defense to Skittles.  Provisions from those policies of relevance to the disputes presented in this federal action are set forth below.

A.   The Liberty Policy

Liberty issued 45 John a Commercial General Liability ("CGL") policy, with a policy period from October 1, 2017 to October 1, 2018 (the "Liberty Policy").  The Liberty Policy is excess over "[a]ny other primary insurance available to you . . . for which you have been added as an additional insured."

B.   The NY Marine Policy

NY Marine issued a CGL policy to Avacon with a policy period from February 9, 2016 to February 9, 2018 (the "NY Marine Policy").  The NY Marine Policy is subject to an each occurrence limit of $2 million and a general aggregate limit of $4 million. The NY Marine Policy is excess over "[a]ny other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured."

The NY Marine Policy contains an endorsement entitled "PRIMARY AND NONCONTRIBUTORY -- OTHER INSURANCE CONDITION" that provides, in part, as follows:

> This insurance is primary to and will not seek contribution from any other insurance available to an additional insured under your policy provided that:
>
> (1) The additional insured is a Named Insured under such other insurance; and
>
> (2) You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

(Emphasis supplied.)

The NY Marine Policy includes as additional insureds entities that are "required by written contract" to be so included, and limits the scope of additional insured coverage to

12

liability for "bodily injury" . . . caused, in whole
or in part, by:

    1. [Avacon's] acts or omissions; or
    2. The acts or omissions of those acting on
    [Avacon's] behalf;

In the performance of [Avacon's] ongoing operations
for the additional insured(s) at the location(s)
designated above.

C.   The Hudson Policy

Hudson issued a Commercial Lines Policy, which included CGL coverage, with a policy period from May 8, 2017 to May 8, 2018, to Skittles as the first Named Insured (the "Hudson Policy"). Hudson issued the Hudson Policy to Skittles at 377 Sharon Avenue, Staten Island, New York; Skittles is a corporation authorized to do business in the State of New York.  Hudson, however, is not licensed as an insurance company in the State of New York.  Hudson was and is organized under the laws of the State of Delaware.  The Hudson Policy is subject to an each occurrence limit of $1 million and a general aggregate limit of $2 million.

The Hudson Policy has an endorsement entitled, "NEW YORK CHANGES -- COMMERCIAL GENERAL LIABILITY COVERAGE FORM", which contains an insuring agreement that provides, in part, as follows:

    **1. Insuring Agreement**

      a. We will pay those sums that the insured becomes
        legally obligated to pay as damages because of

"bodily injury" or "property damage" to which
this insurance applies.  We will have the right
and duty to defend the insured against any "suit"
seeking those damages even if the allegations of
the "suit" are groundless, false or fraudulent.
However, we will have no duty to defend the
insured against any "suit" seeking damages for
"bodily injury" or "property damage" to which
this insurance does not apply.  We may, at our
discretion, investigate any "occurrence" and
settle any claim or "suit" that may result.

The Hudson Policy contains an endorsement entitled,

"ADDITIONAL INSURED --- OWNERS, LESSEES OR CONTRACTORS ---

AUTOMATIC STATUS FOR OTHER PARTIES WHEN REQUIRED IN WRITTEN

CONSTRUCTION AGREEMENT" (the "Hudson AI Endorsement"), that

provides, in part, as follows:

A. **Section II - Who Is An Insured** is amended to include
as an additional insured:

1. Any person or organization for whom you are
performing operations when you and such person
or organization have agreed in writing in a
contract or agreement that such person or
organization be added as an additional insured
on your policy; and

2. Any other person or organization you are
required to add as an additional insured under
the contract or agreement described in
Paragraph **1.** above.

Such person(s) or organization(s) is an additional
insured only with respect to liability for "bodily
injury". . . caused, in whole or in part, by:

a. Your acts or omissions; or

b. The acts or omissions of those acting on
your behalf;

14

in the performance of your ongoing operations for the
additional insured.

However, the insurance afforded to such additional
insured described above:

> **a.** Only applies to the extent permitted by
> law; and

> **b.** Will not be broader than that which you
> are required by the contract or agreement
> to provide for such additional insured.

(Emphasis supplied.)

D.    Tenders and Responses

By letter dated December 19, 2017, NY Marine, Avacon's
insurer, advised Skittles' insurer Hudson of the Underlying
Action and demanded that it defend and indemnify Avacon and 45
John.  On April 11, 2018, Liberty tendered the defense and
indemnity of 45 John for the Underlying Action to Hudson.
Liberty has not received a response to its April 11, 2018 tender
letter to Hudson.  On October 8, 2021, Liberty again tendered
the defense and indemnity of 45 John for the Underlying Action
to Hudson.

By letter dated October 27, 2021, Hudson disclaimed
coverage for 45 John in the Underlying Action, stating that the
basis of the disclaimer was as follows:

Juarez was working for Avacon at the time of the
alleged accident, performing demolition work as a
borrowed employee under the sole control and direction
of Avacon.  As such, Mr. Juarez was not performing
Skittles' ongoing operations (painting, taping,

spackling, etc.) for Avacon or 45 John at the time of the alleged accident.

(Emphasis supplied.)

By letter dated October 12, 2021, Liberty also tendered the defense and indemnity of 45 John for the Underlying Action to NY Marine, Avacon's insurer.  There is no record of NY Marine ever responding to this tender letter.

VII. Procedural History in Federal Lawsuit

Liberty filed this action against NY Marine and Hudson on February 8, 2022, seeking a declaration that NY Marine and Hudson have a duty to defend and indemnify 45 John and that such duties are primary to Liberty's, and requesting a money judgment from NY Marine and Hudson for the expenses Liberty has incurred to defend and indemnify 45 John.[7]  NY Marine brought crossclaims against Hudson on April 7 alleging that Hudson has a duty to defend and indemnify Avacon and that such duties are primary to NY Marine's, and seeking reimbursement of the costs NY Marine has expended defending Avacon.  This case was reassigned to this Court on August 17.  On September 28, Liberty and Hudson stipulated that the Rider applies to the Project.

---

[7] Liberty also sued American Empire Surplus Lines Insurance Company, which had insured Primework Construction Corp., another contractor working on the Project.  Liberty dismissed those claims on February 7, 2023.

Discovery ended on December 12.  An Order of October 27 had required the parties to file their Pretrial Order in this non-jury action by January 27, 2023.  An Order of December 22 extended that deadline to February 16, 2023.

On February 16, the parties filed the Pretrial Order.  The parties have stipulated to the factual record in this bench trial.  The evidence they submitted includes deposition transcripts from Juarez, Andicoecheea, and Barrera.  Summations were heard on March 20.

Following their summations, the parties filed their settlement agreement of February 14, 2023 ("Settlement Agreement").  Under the Settlement Agreement, NY Marine and Hudson agree that they both owed and owe a duty to defend 45 John in the Underlying Action, and such duties to defend are primary to any such duty owed by Liberty.  They agreed to each pay 50% of 45 John's defense costs.[8]  The three insurers agreed that Hudson's acknowledgment of its duty to defend 45 John "may not be used to show that Hudson has a duty to defend" Avacon.

## Conclusions of Law

The parties seek the following relief at this trial.

---

[8] In the event that the Settlement Agreement had not been reached, the request by Liberty for a declaration that both NY Marine and Hudson had and have a duty to defend 45 John and that this duty was primary to any such duty of Liberty would have been entered.

Liberty seeks a judgment that Avacon's insurer NY Marine and Skittles insurer Hudson each owe a duty to indemnify 45 John in the Underlying Action; that their coverage is primary to the coverage Liberty provides to 45 John; and that Hudson must pay Liberty the attorneys' fees Liberty has incurred in this federal action.

NY Marine seeks a declaration that Hudson had and has a duty to defend Avacon from December 19, 2017, which is the date on which NY Marine advised Hudson of the Underlying Action; that Hudson's duty to defend is primary and non-contributory; and that Hudson must reimburse NY Marine for all reasonable fees and costs incurred in the defense of the Underlying Action, including interest, from December 19, 2017.  It argues that a determination of NY Marine's duty to indemnify 45 John is not ripe.

Hudson seeks a finding that it has no duty to defend Avacon.  It opposes any finding that Liberty is entitled to a payment by Hudson of its fees in this declaratory judgment action and argues that a determination of Hudson's duty to indemnify 45 John is premature.

"New York law distinguishes between the duty to indemnify and the duty to defend."  CGS Indus., Inc. v. Charter Oak Fire Ins. Co., 720 F.3d 71, 76-77 (2d Cir. 2013).  "[T]he duty to defend is triggered by the filing of a lawsuit."  Admiral Ins.

Co. v. Niagara Transformer Corp., 57 F.4th 85, 93 (2d Cir. 2023)

(citation omitted).

> In determining whether a duty to defend exists, courts
> are to compare the allegations of the complaint to the
> terms of the policy.  If, liberally construed, the
> claim is within the embrace of the policy, the insurer
> must come forward to defend its insured no matter how
> groundless, false or baseless the suit may be.

Century 21, Inc. v. Diamond State Ins. Co., 442 F.3d 79, 83 (2d

Cir. 2006) (citation omitted).

> A declaration that an insurer is without obligation to
> defend a pending action could be made only if it could
> be concluded as a matter of law that there is no
> possible factual or legal basis on which the insurer
> might eventually be held to be obligated to indemnify
> the insured under any provision of the insurance
> policy.

Servidone Constr. Corp. v. Sec. Ins. Co. of Hartford, 64 N.Y.2d

419, 424 (1985) (citation omitted).

An insurance company has a duty to indemnify "when the

underlying occurrence falls within the scope of coverage

afforded by the particular insurance policy at issue." One

Reason Rd., LLC v. Seneca Ins. Co., Inc., 83 N.Y.S.3d 235, 239

(2d Dep't 2018). "Accordingly, even where a duty to defend has

been established, there may still be a triable issue of fact as

to whether the underlying occurrence was actually within the

scope of coverage afforded by the particular policy at issue."

Id.

"Under New York law, an insurance contract is interpreted

to give effect to the intent of the parties as expressed in the clear language of the contract." Dish Network Corp. v. Ace Am. Ins. Co., 21 F.4th 207, 211 (2d Cir. 2021) (citation omitted). "Unambiguous provisions of an insurance policy are to be given their plain and ordinary meaning, and the plain and ordinary meaning of words may not be disregarded to find an ambiguity where none exists." Id. (citation omitted); see also Jin Ming Chen v. Ins. Co. of the State of Pa., 36 N.Y.3d 133, 138 (2020). "A contractual term is ambiguous if reasonable minds could differ as to the meaning of the term." Dish Network Corp., 21 F.4th at 211 (citation omitted). "Ambiguity is determined by looking within the four corners of the document, not to outside sources." Id. (citation omitted). Any "ambiguities as to coverage are generally construed against the insurer." Id. at 212.

"Where an insurer breaches a contractual duty to defend its insured in a personal injury action, . . . the burden is on the insurer to establish that the loss was not covered by the policy." Servidone Constr. Corp., 64 N.Y.2d at 421. Additionally, if a party is entitled to contractual indemnification, the indemnifying policy must respond before the party's own insurance policy. See Arch Ins. Co. v. Nationwide Prop. & Cas. Ins. Co., 108 N.Y.S.3d 124, 125 (1st Dep't 2019); Indem. Ins. Co. of N. Am. v. St. Paul Mercury Inc. Co., 900

N.Y.S.2d 24, 26 (1st Dep't 2010).

"[D]istrict courts must distinguish between the duty to defend and the duty to indemnify in determining whether each issue posed in a declaratory-judgment action is ripe for adjudication." Admiral Ins. Co., 57 F.4th at 93 (citation omitted).  When the declaratory judgment action addresses the duty to defend, the action is ripe for adjudication when the court finds a "practical likelihood that a third party will commence litigation against the insured." Id. (emphasis in original).  "With respect to the duty to indemnify, the court must find a practical likelihood that the third party will prevail in such litigation." Id. (emphasis in original).

A court retains discretion, however, to refuse to exercise jurisdiction over a declaratory judgment action that it "would otherwise be empowered to hear." Id. at 96 (citation omitted).  Courts consider the following factors when exercising such discretion:

> (1) whether the declaratory judgment sought will serve a useful purpose in clarifying or settling the legal issues involved; (2) whether such a judgment would finalize the controversy and offer relief from uncertainty; (3) whether the proposed remedy is being used merely for procedural fencing or a race to res judicata; (4) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; (5) whether there is a better or more effective remedy; and (6) whether concerns for judicial efficiency and judicial economy favor declining to exercise jurisdiction.

Id. at 99–100 (citation omitted).

I.   NY Marine's Duty to Indemnify 45 John

Liberty seeks a declaration that NY Marine has a duty to indemnify 45 John for any judgment entered against 45 John in the Underlying Action.  It is undisputed that 45 John is an additional insured under the NY Marine Policy and that judgment has already been entered against Avacon on Juarez's § 240(1) claim.  Liberty argues as well that NY Marine breached its duty to defend 45 John, and because of that, NY Marine has the burden of establishing that it has no duty to indemnify.

Liberty is correct that NY Marine has a duty to indemnify 45 John.  The NY Marine Policy covers 45 John as an additional insured for bodily injuries "caused, in whole or in part, by" the "acts or omissions" of Avacon or those acting on its behalf. Avacon has already been found liable under § 240(1).  Therefore, NY Marine has a duty to indemnify 45 John for any award entered against 45 John on Juarez's claims.

Liberty also seeks a declaration that the NY Marine coverage is primary to Liberty's coverage of 45 John.  NY Marine does not dispute that, should it be required to indemnify 45 John, that its coverage is primary.  The NY Marine Policy states that its insurance is primary to "any other insurance available

to" 45 John.[9]  Therefore, NY Marine's insurance coverage is primary over Liberty's coverage.

NY Marine asserts that a decision on its duty to indemnify Liberty is premature.  It is not premature.  There is no dispute that Juarez was injured while working on the Project and is entitled to compensation.  Judgment has already been granted against 45 John and Avacon on at least one of the claims at issue in the Underlying Action.  Disputes remain over the amount of the compensation owed to Juarez and whether Hudson as opposed to NY Marine will have primary responsibility to satisfy any judgment entered in favor of Juarez.  Those disputes, however, will not affect NY Marine's duty to indemnify 45 John.  An insured is not denied "recourse to a carrier merely because another carrier may also be responsible." Cont'l Cas. Co. v. Rapid-Am. Co., 80 N.Y.2d 640, 655 (1993).

There is also no reason to defer deciding this declaratory judgment claim.  This declaration will serve a useful purpose and will resolve at least some of the uncertainty over which insurance policy is responsible for satisfying a judgment against 45 John in the Underlying Action.  Furthermore, entering a decision at this time does not raise concerns about procedural

---

[9] The Liberty Policy states that its insurance is excess over any other primary insurance provided to 45 John as an additional insured.

fencing and in fact promotes judicial economy and facilitates settlement discussions.

II.  Hudson's Duty to Indemnify 45 John

     Liberty seeks a declaration that Hudson, Skittles' insurer, must also indemnify 45 John.  The Hudson AI Endorsement provides coverage for additional insureds for "bodily injury" "caused, in whole or in part, by" Skittles' "acts or omissions" or the acts or omissions "of those acting on . . . behalf" of Skittles "in the performance of [Skittles'] ongoing operations for the additional insured."

     Hudson breached its duty to defend 45 John in the Underlying Action.  As a result, it bears the burden of proving that Juarez's claims for damages are not "covered by" the Hudson Policy.  Servidone Constr. Corp., 64 N.Y.2d at 421.

     Liberty is correct that Hudson has a duty to indemnify 45 John.  45 John is an additional insured under the Hudson Policy. Undisputed facts, including Hudson's stipulation of September 28, 2022, establish that Skittles, Hudson's insured, proximately caused the injuries to Juarez that are the subject of the Underlying Action.  Accordingly, the Hudson Policy created a duty to indemnify 45 John for any damages to be awarded Juarez in that action.

     In construing the Hudson Policy coverage for an additional insured, which provides coverage for injuries caused in whole or

24

in part by the acts of those acting on behalf of Skittles in the
performance of Skittles' ongoing operations for 45 John, a court
undertakes a proximate causation analysis.  See Burlington Ins.
Co. v. NYC Tr. Auth., 29 N.Y.3d 313, 321 (2017).  "A defendant's
negligence qualifies as a proximate cause where it is a
substantial cause of the events which produced the injury."
Hain v. Jamison, 28 N.Y.3d 524, 528-29 (2016) (citation
omitted).  "[T]here may," of course, "be more than one proximate
cause of an injury."  Id. at 529 (citation omitted).  Here, it
is undisputed that Juarez was a Skittles employee, that Skittles
was employed on the Project at 45 John, that Skittles built the
scaffold from which Juarez fell, that a Skittles' employee
directed Juarez to mount the scaffold to perform work on the
Project, that no Skittles employee provided Juarez with
protective gear, and that no external force acted upon the
scaffold to cause it to collapse and injure Juarez.  These facts
establish that Skittles was a proximate cause of Juarez's
injury.

     Liberty is also correct that the Hudson Policy's coverage
of 45 John as an additional insured is primary to the Liberty
Policy.  The Rider required Skittles to procure insurance
coverage for 45 John that was primary and non-contributory, and
the Hudson Policy states that the Hudson Policy is primary and
non-contributory when such an agreement is executed.  Hudson

does not dispute that, if Hudson has a duty to indemnify 45 John, its policy is primary to Liberty.

Hudson makes several arguments to resist a finding, at least at this time, that it has a duty to indemnify 45 John. Hudson argues that 45 John is not an additional insured on Paragraph 1 of Section A.II of the Hudson AI Endorsement.  This reading fails.  Skittles agreed in writing that 45 John would be added as an additional insured, and Skittles was performing work for 45 John at the time Juarez was injured.  Nothing in the Hudson Policy indicates that the writing to which Paragraph 1 refers must also specify the scope of work to be performed for the additional insured.  All that is required is that there is a writing in which Skittles agreed to add 45 John as an additional insured, and the Rider constitutes such a writing.

Hudson next argues that a decision on its duty to indemnify 45 John must await a decision in the Underlying Action as to whether it was performing "ongoing operations" for 45 John at the time of the accident.  It contends that Skittles was not engaged to perform scaffolding work and that Juarez was working as a borrowed employee for Avacon when he helped Avacon to demolish the interior of the first floor.  The state court determination on the scope of the work that Skittles was contractually bound to perform for Avacon, however, is a separate inquiry.  The relevant question for indemnification is

26

whether Skittles proximately caused Juarez's injuries.  As explained above, the undisputed evidence establishes that it did.

Lastly, Hudson asks that the Court defer deciding this indemnification claim.  As was true for the declaration of NY Marine's duty to indemnify 45 John, this declaration of Hudson's duty to indemnify 45 John should not be delayed.  The decision will serve a useful purpose.  It will resolve uncertainty by informing the parties which insurance policy is responsible for satisfying any judgment against 45 John in the Underlying Action.  There is no realistic doubt but that Juarez will prevail in the Underlying Action.  He has already been awarded summary judgment on some of his claims.  Moreover, as previously stated, entering a decision at this time does not raise concerns about procedural fencing and in fact promotes judicial economy.

III. Hudson's Duty to Defend Avacon

NY Marine argues that Hudson has a duty to defend Avacon in the Underlying Action.[10]  Per the Settlement Agreement, NY Marine and Hudson have agreed that they have a duty to defend 45 John. They have also agreed that Hudson's acknowledgment of its duty to defend 45 John may not be used to show that Hudson has a duty

---

[10] NY Marine has agreed to reserve until the conclusion of the Underlying Action its claim that Hudson has a duty to indemnify Avacon.

27

to defend Avacon.

Hudson had and still has a duty to defend Avacon.  The duty
to defend was triggered by the allegations in the Underlying
Action.  Juarez alleges that he was an employee of Skittles at
the time of the accident.  So long as the allegations in the
pleadings in the Underlying Action gave rise to "a reasonable
possibility of coverage" under the policy, Hudson had a duty to
defend Avacon.  Cont'l Cas. Co., 80 N.Y.2d at 648.  An insurer
is required in these circumstances to defend even if it or its
insured may ultimately prevail in the litigation.  Servidone
Const. Corp., 64 N.Y.2d at 424.  The obligation to defend
applies with equal force to an additional insured.  BP Air
Conditioning Corp. v. One Beacon Ins. Grp., 821 N.Y.S.2d 1, 2
(1st Dep't 2006).

Hudson's duty to defend Avacon is primary and non-
contributory.  The Rider required Skittles to procure insurance
coverage for Avacon that was primary and non-contributory, and
the Hudson Policy states that the Hudson Policy is primary and
non-contributory when such an agreement is executed.  Hudson
does not dispute that, if Hudson has a duty to defend Avacon,
its policy is primary and non-contributory to NY Marine.

NY Marine is also entitled to the reasonable attorneys'
fees and costs it incurred in its defense of Avacon in the
Underlying Action after the date of first tender -- December 19,

28

2017.  Any judgment on attorneys' fees must include statutory
pre-judgment interest at a rate of 9% per annum.  N.Y. C.P.L.R.
§ 5004(a).

Hudson does not deny that its written agreement with Avacon
required Skittles to procure insurance coverage for Avacon and
45 John.  Hudson contends, however, that it has no duty to
defend Avacon because there was nothing in writing indicating
that Skittles was hired for demolition work, that the injury
occurred because of demolition work, and that without a written
contract covering demolition work, no additional insured
endorsement was triggered.  This argument fails.  The test for
the duty to defend hinges on the allegations in the pleadings in
the Underlying Action.  In any event, Skittles' reading of the
Hudson Policy fails.

First, there was no written description in any of the
documents signed by Skittles of the work it was hired to
perform.  For instance, the Rider contained no description of
the type of work that Skittles was hired to perform.  The Rider,
however, was executed by Avacon and Skittles and listed both 45
John and Avacon in the list of indemnified parties and
additional insureds.  It is undisputed that it applied to
Skittles' work on the Project.

Second, there is no requirement in the Hudson Policy that
any coverage be supported by a written job description, much

less that to be covered an injury must occur due to work
encompassed by a written job description.  The Hudson Policy
only requires that a written agreement between the insured and
the additional insured exist.  Such an agreement does exist
here.  The Hudson Policy includes as an additional insured any
organization "for whom you are performing operations when you
and such person or organization have agreed in writing in a
contract or agreement that such person or organization be added
as an additional insured."  There is no dispute that the Rider -
- the contract between Avacon and Skittles -- required Skittles
to add Avacon to Skittles' insurance policy as an additional
insured.  There is also no dispute that Skittles was performing
operations for Avacon at 45 John at the very time the accident
occurred.

Hudson also argues that there are disputed issues of fact
as to whether Juarez's injury was caused "in the performance of
[Skittles'] ongoing operations for the additional insured."  It
argues that Juarez was doing work outside its contract with
Avacon at the request of Avacon.  These factual questions,
however, are irrelevant to Hudson's duty to defend, which is
triggered by the allegations in the state court pleadings.

IV.  Declaratory Judgment Fees

Liberty asserts that Hudson is liable for Liberty's
attorneys' fees in this federal action.  It relies on N.Y.

Insurance Law § 1213(d), which states:

> In any action against an unauthorized foreign or alien
> insurer upon a contract of insurance issued or
> delivered in this state to a resident thereof or to a
> corporation authorized to do business therein, if the
> insurer has <u>failed</u> for thirty days after demand prior
> to the commencement of the action <u>to make payment</u>
> pursuant to the contract, and it appears to the court
> that such <u>refusal was vexatious and without reasonable</u>
> <u>cause</u>, the court may allow plaintiff a reasonable
> attorney's fee and include such fee in any judgment
> rendered in such action.  Such fee shall not exceed
> twelve and one-half percent of the amount the court
> finds the plaintiff is entitled to recover against the
> insurer nor be less than twenty-five dollars.  <u>Failure</u>
> <u>of an insurer to defend</u> any such action <u>shall be prima</u>
> <u>facie evidence</u> that its failure to pay was vexatious
> and without reasonable cause.

N.Y. Ins. Law § 1213(d) (emphasis supplied).

Liberty is entitled to attorneys' fees from Hudson.  Hudson
is an "unauthorized" insurer in New York State and failed to
defend 45 John after more than 30 days had passed following the
receipt of a demand.  That failure extended to February 14,
2023.  Hudson's failure to do so was "vexatious and without
reasonable cause," as the allegations in the state court
pleadings triggered Hudson's duty to defend 45 John.

Hudson argues that §§ 1213, 2105, and 1113 exempt it from
the obligation to pay Liberty's attorneys' fees.  Section 1213
states in relevant part:

> <u>This section shall not apply</u> to any proceeding against
> any unauthorized foreign or alien insurer <u>arising out</u>
> <u>of any contract of insurance effectuated in accordance</u>
> <u>with . . . [§ 2105]</u> of this chapter where such
> contract designates the superintendent or his

31

successors in office the insurer's true and lawful
attorney upon whom may be served all lawful process in
any proceeding instituted by or on behalf of an
insured or beneficiary arising out of such contract.

Id. § 1213(e) (emphasis supplied).

As relevant here, § 2105 states:

The superintendent may issue an excess line broker's
license to any person, firm, association or
corporation . . . authorizing such person, firm,
association or corporation to procure, subject to the
restrictions herein provided, policies of insurance
from insurers which are not authorized to transact
business in this state of the kind or kinds of
insurance specified in paragraphs four through
fourteen, sixteen, seventeen, nineteen, twenty,
twenty-two, twenty-seven, twenty-eight, thirty-one,
thirty-two and thirty-three of subsection (a) of [§
1113] of this chapter and in subsection (h) of this
section . . . .

Id. § 2105(a) (emphasis supplied).  Hudson relies on one of the

kinds of insurance specified in § 2105(a), specifically

insurance described in subsection (a)(13) of § 1113.

Section 1113(a) provides:

The kinds of insurance which may be authorized in this
state, subject to other provisions of this chapter,
and their scope, are set forth in the following
paragraphs. . . .  No kind of insurance shall include
. . . insurance against legal liability for personal
injury or death unless specified in this section.

Id. § 1113(a) (emphasis supplied).  Section 1113(a)(13)

provides:

"Personal injury liability insurance," means insurance
against legal liability of the insured, and against
loss, damage or expense incident to a claim of such
liability (including the insurer's obligation to pay
medical, hospital, surgical and disability benefits to

injured persons, and funeral and death benefits to
dependents, beneficiaries or personal representatives
of persons who are killed, irrespective of legal
liability of the insured), <u>arising out of death or
injury of any person</u>, or arising out of injury to the
economic interests of any person, <u>as the result of
negligence in rendering expert, fiduciary or
professional service</u>, . . . .

<u>Id.</u> § 1113(a)(13) (emphasis supplied).

As relevant here, personal injury liability insurance means
insurance for personal injury claims that are a "result of
negligence in rending expert, fiduciary or professional
service." <u>Id.</u>  It does not apply to the CGL coverage that
Hudson is providing to Skittles.  Therefore, the exception to §
1213(d) does not exempt Hudson from reimbursing Liberty for the
fees and costs it incurred in bring this declaratory judgment
action.

Hudson argues that in § 1113(a)(13), the modifier "as a
result of negligence in rending expert, fiduciary or
professional service" only applies to the immediately preceding
phrase "or arising out of injury to the economic interests of
any person," and therefore its policy falls under the "arising
out of death or injury of any person" phrase in the statute.
This reading of the statute is incorrect.  The comma after "or
arising out of injury to the economic interests of any person"
means that the subsequent modifier applies to the entire series,
which includes "arising out of death or injury of any person."

33

See <u>Am. Int'l Grp., Inc. v. Bank of Am., Corp.</u>, 712 F.3d 775, 781-82 (2d Cir. 2013).

In sum, Hudson is not authorized to issue insurance in New York, it unreasonably refused to defend 45 John in the Underlying Action, and therefore Liberty is entitled to reimbursement of its attorneys' fees incurred in his federal action.  Hudson seeks to avoid this result by arguing that it is exempt from the duty imposed by § 1213(d) because it designated the Superintendent of Insurance to receive service of process and provided personal injury liability insurance pursuant to § 1113(a)(13).  Its reading of § 1113(a)(13) fails.

## Conclusion

For the foregoing reasons, the Court holds in this bench trial that (1) NY Marine has a duty to indemnify Liberty's insured, 45 John; (2) Hudson has a duty to indemnify Liberty's insured, 45 John; (3) the NY Marine Policy and the Hudson Policy are primary to the Liberty Policy; (4) Hudson had and has a duty to defend NY Marine's insured, Avacon; (5) the Hudson Policy is primary and non-contributory to the NY Marine Policy; (6) NY Marine is entitled to the reasonable attorneys' fees and costs it has incurred providing a defense to Avacon in the Underlying Action from December 19, 2017 with a pre-judgment interest rate of 9% per annum; and (7) due to Hudson's vexatious failure to defend 45 John, Hudson must reimburse Liberty its reasonable

attorneys' fees in this federal action.  A scheduling order has

been issued to aid in the determination of the awards of

attorneys' fees granted herein.

Dated:     New York, New York
           March 22, 2023

                                        _____
                                            DENISE COTE
                                        United States District Judge